### *Professional Public Adjusters, LLC*
**505 N I35E Service Rd, Suite 400**
**Red Oak, Texas 75154**
**817-805-7008**

### NARRATIVE REPORT

This report is in reference to the property located at 2425 South West Loop, Houston, Texas 77027.

On 1/3/2017, Professional Public Adjusters, LLC performed and inspection of the property for "pipe burst related" damages as requested by McClenny, Moseley and Assoc. The inspection was performed by Robert Smith of Professional Public Adjusters, LLC (hereby referred to as PPA). There was a previous estimate to base our inspection off of, however, we performed a complete inspection of the property inclusive of damages found that were not identified by the individual from the carrier. There had also been a contractor (Paramount Disaster Recovery) on site that had removed all water damage from the building and did some temporary repairs to allow for occupancy to continue.

Their invoice amount has been added to our estimate as the insured contracted them to protect their dwelling against further damages, which is required of the insured to "protect their dwelling from further damages".

No information as to financial accounting has been provided to our firm and no allowances have been made for potential business income loss. We have, however, made allowances for the inconveniences that will take place with the tenants during the repair process. As per City of Houston

Building Code requirements, we have allowed for the code upgrades required by the city. Estimates and photos taken by PPA will document the true existence of all damages to the property.

The standard for removal and replacement of materials that have gotten wet that is used in this estimate are based on the American National Safety Institute of Inspection Cleaning and Restoration Certification.

**Summary of Opinions:**

1.  Based on my skills, knowledge, training and experience as an adjuster with over 13 years of adjusting claims, including residential, farming and commercial losses, that include damages ranging from hurricane, hail, tornado, flood, water break, fire and vandalism, my opinion is that the reasonable cost of repair for the damages caused by the water event that occurred on 10/24/2016 is $7,722,933.09.

2.  In forming my opinion I am relying on the following:

    a.  Numerous physical inspections of the property.

    b.  Xactimate software for line item and pricing purposes.

    c.  The report/opinions of Tom Irmiter (Licensed Code Official) for establishing the need/justification of additional expenses related to code required work in the course of repairs.  Issues involved were discussed at length with Mr. Irmiter.

    d.  Interior remediation based on American National Standards Institute.

    e.  My years of experience in the construction field include 10+ years with our family owned development company (Ensign/Smith,Inc.) as well as Ron Smith and Sons construction company during which time I also was a general contractor.  As part of my responsibilities in the company I oversaw all residential and commercial remodeling and construction.  For a full list of my qualifications please see my cv which is attached to this report.

    f.  Chapter 6 "Types of Construction" from the Houston Building Codes book was provided to me by Houston Building Code Department.  The document is attached to this report.

    g.  Discussions with the Houston City Code Department.

    h.  An estimate by JS Held,LLC that totals $109,642.26.

    i.  Conversations with JetAll employees and tenants, including but not limited to Brad

Parker and Sarah Meassels.

j.  Insurance Policy.

k.  I hold my opinions to a reasonable degree of professional certainty.

3.  In forming my opinions, I rely on the same kinds of information that other experts in my field typically rely upon.  This will include the Xactimate program, bid items received by 3rd parties, review of other experts reports and discussions with individuals whom have knowledge of the building and the damages. In forming my opinions I applied the same methodology that I used when adjusting claims for insurance carriers, and the same methodology I utilize and teach in my daily work as a licensed public adjuster and owner/founder of Professional Public Adjusters,LLC.

**<u>Methodology:</u>**

I was tasked with determining the reasonable cost of remediating the damages to the property as the result of the water event caused by the rupture of a pipe connection of a 10" to 2" reduction on the 11th floor.

The process used to establish the estimate finalization was to inspect the property for damaged/undamaged areas, talk to employees and tenants and measure and document areas of damage.

In inspecting the property, I started with the location of the "event" which was on the 11th floor. The "event" was that a pipe connection of a 10" water pipe to a 2" pvc pipe ruptured/broke resulting in a massive amount of water being released for several hours traveling from the 11th floor downwards to the bottom of the building.  This water utilized all possible means of penetrations from floor to floor inclusive of all slab related openings from floor to floor.

Floor by floor, going downwards, I followed the extent/expanse of the water impact. In

inspecting the property, I relied upon my skilled knowledge, training and experience to identify damages caused by the water event. The standard I used to establish what repairs were needed are the standards accepted within the industry when the existence of water is apparent. When items such as insulation, drywall, floor coverings and ceiling tiles get wet, they are removed/replaced and the rest of the area is cleaned, dried and treated for removal of potential bacterial growth. Simply drying a component does not address the potential for bacterial growth. This is especially relevant when a 3rd party liability potential exists such as a tenancy.

I then identified what components of the building were exposed to the water and needed to be replaced/repaired. I measured the occupancies with a laser measurer to document the square footage of existence for occupancy as well as area of damages. I took detailed notes as inspecting to establish pertinent information to be used for creating the estimate. This would include dimensions of rooms, existence of all components in each room as well as the actual occupancy of the area being inspected so that any tenant displacement as well as area identification could be made.

In the case of the damages to this building due to a pipe failure on the 11th floor, there are 2 different injured parties. One as the result of the pipe failure, the other due to an inferior assessment of the damages/repairs that needed to be done to put the property back into an occupied and insurable condition.

What Professional Public Adjusters, LLC will attempt to do is create an estimate designed to represent the damages/repairs accepted by the carrier estimate. The unfortunate situation with JS Held's estimate is that it does not appear to have been written by someone with experience on remediating damages from the carrier perspective and a concern for 3rd party liability (future biological impact). In our estimate, damages will be assigned to their appropriate

areas whether by floor level, tenancy or appropriately named rooms.  The base product used was provided by the insured (who is the party responsible for being able to effect the repairs and should be allowed to identify where the repair monies should be spent) and represents the occupancy at the time of the event.  A copy of these documents is included in the report/estimate.

As the founder of Professional Public Adjusters, I have been assigned and processed thousands of claims as an adjuster for the insurance carrier (prior to becoming a pubic adjuster) and in every case the files addressed all aspects of the damages as well as areas of "no damage" and then were sent up to the carrier for "file review".

Below is a list of problems identified with the JS Held, LLC estimate:

1.    The estimate acknowledges the presence of water on all floors from 11th to the first yet does not include any fans, dehumidifiers or antimicrobials.

2.    The estimate states that "NO CODE UPGRADES ARE INCLUDED AT THIS TIME".  This is problematic in that you cannot properly assess the damages and put a dollar amount on those damages without identifying exactly what needs to take place.  This is an indication of someone sent out that is not an adjuster and not qualified to properly assess the event.

3.    The JS Held expert stated on page 2 of their estimate no emergency repairs, demolition or hazardous materials were taken into account.

4.    The estimator for JS Held repeatedly uses "seal the surface area w/latex based stain blocker-one coat". This is a process used to seal the moisture into the wall. This process leaves the moisture in the wall and allows for the growth of bacteria.

5.    The water traveled from floor to floor through all available openings. These openings varied from electrical line access holes through the slabs, the vertical

structure beams and the exterior of the floors where the slab ends and then the windows/exterior walls exist.  No where in JS Held's estimate is this addressed.

6.  The estimator's allowances for work timeline were quite short for the work to be done and adjustments have been made for content manipulation, scaffolding, number of toilets and other repairs.

## GENERAL

### Roof

No damages related to this event.

### Exterior elevations

No damages related to this event.

### Floor 11

This is the floor that the pipe burst took place on.  The water in this floor was confined to the general area in that side of the building. There was not any structural damage, just a lot of water and cleaning up.

### Floor 10

This is one of the floors occupied by "Stage".  This tenant removed the ceilings on all the floors it occupies and had them brought up to code prior to occupancy. No code upgrades are required on any of the Stage occupied floors.  The water from the 11th floor cascaded downward from floor level to floor level. The damage on the 10th floor was in the Break room, Conference room, "Office 1" and Storage room.  Repairs included replacement of walls, flooring, cabinetry and some ceiling due to water.  There was also content manipulation of both company related items and break room items such as vending machines.

**Floor 9**

This floor is also a "Stage" occupied floor.  No code related upgrades on this floor. Damages were confined to the Break room, Conference room 1, Conference room 2, Office 1, Storage room and Hallway.  Repairs on this floor were very similar to those on floor 10 as the floors are clones of each other and the water traveled reasonably straight down from the 11th floor.

**Floor 8**

This floor is not occupied by Stage.   It has various tenants. Damage on this floor was in Isramco lobby, Hallway and the server room. Again the repairs were comparable to the those on the floors above, however, this floor was found to not be up to City of Houston building codes. We allowed for the repairs to bring the floor up to code acceptance as will be required by the City of Houston.

**Floor 7**

This is another "Stage" occupied floor.  Damages were found in the Break room, Conference room, Hallway and Mechanical room. These damages were consistent with the damages from the floors above.

**Floor 6**

This is another "Stage" occupied floor.  Damages were found in the Conference room, Hallway, Women's Restroom and Mechanical room.  These damages were consistent with the damages from the floors above.

**Floor 5**

This is another "Stage" occupied floor.  Damages were found in the Conference room, Hallway and Mechanical room.  These damages were consistent with the damages from the

floors above.

### Floor 4

This is another "Stage" occupied floor. Damages were found in the Tech room, Hallway, Women's Restroom and Mechanical room. These damages were consistent with the damages from the floors above.

### Floor 3

This floor is not occupied by Stage. It is a Fitness Center Floor. Damages were in the Fitness Center 1 and 2 as well as the Hallway and Mechanical room east. These damages were consistent with the damages from the floors above. This floor was also found to be not up to code and allowances were made in the estimate to bring the floor up to current code level.

### Floor 2

This floor is not occupied by Stage. It is occupied by various tenants for office purposes. Damages were found in Regus-Room 84, Hallway, Women's Restroom and the Mechanical room. These damages were consistent with the damages from the floors above. This floor was also found to be not up to code and allowances were made in the estimate to bring the floor up to current code level.

### Floor 1

This floor is also not occupied by "Stage". It is occupied by a bank and several other tenants. Damages were found in the bank (in the bank lobby and bank kitchen) and the Mechanical room. This floor was also found to be not up to code and allowances were made in the estimate to bring the floor up to current code level.

Respectfully,

Robert H. Smith, EGA
Professional Public Adjusters, LLC